**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **BLAINE FLINDERS and DAVID BROWN, on Behalf of Themselves and Others Similarly Situated,** | |
| **Plaintiffs,** | **MEMORANDUM DECISION AND ORDER** |
| **vs.** | |
| **WORKFORCE STABILIZATION PLAN OF PHILLIPS PETROLEUM COMPANY,** | **Case No.  2:04CV 00541** |
| **Defendant.** | |

This matter is before the court on the Plaintiffs' Motion for Leave to File Amended Complaint and the Plaintiffs' Motion for Leave to File Second Amended Complaint.   The court has carefully considered the memoranda and other materials submitted by the parties as well as the law and facts relating to these motions.  The court has determined that oral argument would not substantially assist the court in determining these motions.  Now being fully advised, the court renders the following Order.

## BACKGROUND

_ERISA Class Action_

The above-entitled action arose out of the Defendant Workforce Stabilization Plan of Phillips Petroleum Company's (the "Plan") denial of Plaintiffs' claims for benefits under the Plan.  The Plan is an employee benefit plan administered on behalf of Phillips Petroleum Company.  The purpose of the Plan is to provide benefits to eligible employees who are laid off

in connection with, among other things, the merger of Phillips Petroleum Company with another company.  The Plan is administered pursuant to a written plan document ("Plan Document") and summary plan description ("SPD"), the terms of which specifically exclude from the Plan employees who are members of a recognized or certified collective bargaining unit unless the Plan is included in the collective bargaining agreement.

On March 4, 2002, Phillips Petroleum Company merged with Conoco resulting in the formation of a new company, ConocoPhillips.  As a result of this merger, the U.S. Federal Trade Commission required that ConocoPhillips sell its refinery located in Woods Cross, Utah in order to comply with federal anti-trust laws.  In compliance with this directive, the Woods Cross refinery was sold to Holly Corporation.

Plaintiffs Blaine Flinders and David Brown were employees of the Woods Cross refinery prior to Phillips Petroleum Company's merger with Conoco.  Plaintiffs allege that as a result of the merger, their employment with Phillips Petroleum Company came to an end constituting a layoff within the meaning of the Plan.  Plaintiffs therefore applied for benefits under the Plan on June 5, 2003.

The Plan rejected the Plaintiffs' claims for benefits in a letter dated September 24, 2003 on the grounds that Plaintiffs were members of Local 8-578, Paper, Allied-Industrial, Chemical and Energy Workers International Union ("Local 8-578"), a recognized or certified collective bargaining unit, and that the applicable collective bargaining agreement did not include coverage under the Plan.  In making this determination, the Plan relied on Article VII of Local 8-578's collective bargaining agreement which provides that "[e]xcept, as hereinafter limited, all benefits arranged by the Company for its employees generally, shall be available to employees covered by

2

this Agreement." 2002-2006 Agreement Between Phillips Petroleum Company and Local 8-578, Art. VII, § 1 ("Local 8-578's Agreement").

Plaintiffs appealed the denial of their claim for benefits under the Plan on October 29, 2003, arguing that a reasonable review of the language set forth in Article VII, Section 1 of Local 8-578's Agreement makes clear that coverage under the Plan is included.  On December 18, 2003, the Plan responded to this appeal by upholding its previous decision and again denying Plaintiffs' claim for benefits.  Having properly exhausted their administrative remedies, the Plaintiffs then filed the above-entitled action on June 14, 2004 as a class-action on behalf of:

> All members of Local No. 8-578, Paper, Allied-Industrial, Chemical & Energy Workers International Union who applied for benefits from the Workforce Stabilization Plan of Phillips Petroleum Company in connection with the sale of the Phillips Petroleum Company Woods Cross Refinery to Holly Corporation on or about June 1, 2003 (the "Woods Cross Claimants").

Plaintiffs' Complaint sets forth a cause of action against the Plan pursuant to ERISA § 502 and claims that the members of the class are eligible and entitled to benefits under the Plan.  The parties stipulated to the certification of the class and the court entered an order granting class certification to the Woods Cross Claimants on November 1, 2004.

*The Spokane Claimants*

As a result of the Phillips/Conoco merger, Tosco Refining Company (a subsidiary of Phillips Petroleum Company) additionally sold its Spokane, Washington terminal to Holly Corporation.  Steve Kober, Dennis Hawks, Steven Reiber and Scott Reiber, all of whom were members of the Oil, Chemical and Atomic Workers International Union, AFL-CIO, Local Union No. 1-562 ("Local 1-562"), were laid off by Tosco Refining Company in connection with the sale of the Washington terminal to the Holly Corporation.  After being laid off, these four individuals

(the "Spokane Claimants") applied for benefits under the Plan.

Like the Plaintiffs, the Spokane Claimants' application for benefits was denied by the Plan on the basis that they were members of a recognized or certified collective bargaining unit whose collective bargaining agreement did not include the Plan. In making this determination, the Plan relied on Article X of Local 1-562's collective bargaining agreement which provides that "[e]xcept, as hereinafter limited, all benefits arranged by the Company for its employees as a whole, shall be available to all employees covered by this Agreement." February 1, 1999 Working Agreement Between Tosco Refining Company and Local 1-562, Art. X ("Local 1-562's Agreement"). The Plan's denial of benefits, which was set forth in a letter dated September 14, 2004, additionally stated that pursuant to the Plan, an appeal of the denial must be filed with the Plan Committee within sixty days after issuance of the denial letter.

The Spokane Claimants, by letter dated November 3, 2004, appealed the Plan's denial of benefits on the basis that Article X of Local 1-562's Agreement makes clear that coverage under the Plan was included. This November 3, 2004 letter, however, may not have been sent to the Plan Committee within the allowed sixty days. The Spokane Claimants' counsel, in a January 12, 2005 letter to the Plan's counsel, recognized that because of an oversight, the November 3, 2004 appeal may not have been sent to the Plan Committee. The January 12, 2005 letter therefore included a copy of the November 3, 2004 appeal. On February 9, 2005, the Plan Administrator sent a letter to the Spokane Claimants' counsel denying the appeal on the basis that it was untimely. The Plan claimed it did not receive the November 3, 2004 appeal until it received the January 12, 2005 letter, long after the time for filing an appeal had passed.

After the Plan Committee's decision to deny the appeal, the Plaintiffs filed a Motion for

4

Leave to File Amended Complaint (the "Motion") seeking to expand the class definition in the above-entitled action to include the Spokane Claimants.[1]  The Plaintiffs additionally move the Court for leave to amend their Complaint to expand the class definition to include former members of Local 8-578 who have since been promoted to management positions and are no longer members of the bargaining agreement.

*Cause of Action for Breach of Fiduciary Duty*

In December of 2004, the parties stipulated to a revised scheduling order which set forth the following deadlines:

Deadline for completion of all discovery:          March 15, 2005

Last day to file motion to amend pleadings:        February 11, 2005

Last day for filing dispositive motions:           April 15, 2005

On March 21, 2005, the Plaintiffs filed a Motion for Leave to File Second Amended Complaint ("Second Motion").  This Second Motion was filed five weeks after the applicable deadline for amending pleadings had passed, six days after the deadline for completing discovery had passed, and three weeks prior to the deadline for filing dispositive motions.

The Plaintiffs seek leave to amend their Complaint to add a new cause of action for breach of fiduciary duty against Joseph C. High, the Plan's administrator at all times relevant to this suit.  Plaintiffs claim that it was only in the course of recently reviewing voluminous document discovery (over 1800 + documents were disclosed by the Plan) that they identified documents suggesting the need to allege this additional cause of action.  The Plaintiffs

---

[1]Although filed on February 14, 2004, three days after the deadline for filing motions to amend pleadings, the Motion is not untimely because the Plan stipulated to an extension of the deadline which allowed Plaintiffs to file the Motion by February 14, 2004.

specifically point to an e-mail that they recently became aware of which suggests that Mr. High intentionally delayed distribution of the March 12, 2002 SPD, which had been changed to reflect the ineligibility of employees who were members of a union, until after collective bargaining negotiations were completed so as to prevent discussion of workforce stabilization benefits during those negotiations.  Plaintiffs, therefore, moved the Court to allow them to amend their Complaint to add this cause of action despite the fact the deadline for filing such motions has run.

## DISCUSSION

### I.      Motion for Leave to File Amended Complaint.

In their Motion, the Plaintiffs seek to amend the Complaint to more clearly describe the class definition as including individuals who were members of Local No. 8-578 at the time in question and who have since been promoted into management.  Because this proposed amendment is unopposed and does not result in the addition of any class members, no further analysis by the Court is required.  The Court therefore grants Plaintiffs leave to amend the Complaint to more clearly describe the class definition as requested.

The Motion, however, additionally seeks to amend the Complaint to expand the definition of the class to include the Spokane Claimants.  The Plan is strongly opposed to this proposed amendment on two grounds: 1) the Spokane Claimants' joinder in the class would violate the typicality and commonality requirements of Federal Rule of Civil Procedure 23(a); and 2) amendment of the Complaint to add the Spokane Claimants would be futile.  As detailed below, the Court rejects both of these arguments and grants the Plaintiffs leave to amend the Complaint as proposed.

### A.    *Typicality and Commonality Requirements of Rule 23(a).*

Pursuant to Federal Rule of Civil Procedure 23(a), a class action may be maintained only

if the following requirements are met:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there
> are questions of law or fact common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These four requirements are commonly referred to as the numerosity,

commonality, typicality, and adequacy of representation requirements.  A determination as to

whether these requirements have been met is "within the sound discretion of the trial court."

*Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982).  In making this determination, courts

apply the rule liberally.  *M.A.C. v. Betit*, 284 F. Supp. 2d 1298, 1303 (D. Utah 2003).

In analyzing whether the class set forth in the original Complaint should be certified, the

parties' stipulated and the Court agreed that each of the above four requirements was met.  The

requested expansion of the class to include the Spokane Claimants, however, requires the Court

to determine whether the addition of the Spokane Claimants to the class would violate the

commonality and typicality requirements of Rule 23(a).  *See* Fed. R. Civ. P. 23(a)(2) and (a)(3).

The commonality requirement is met where there exists "questions of law or fact

common to the class."  Fed. R. Civ. P. 23(a)(2).  The Plan asserts that there are no common

issues of law or fact between the Woods Cross Claimants and Spokane Claimants because they

worked at different facilities in different states, they reported to a separate line of management,

they are members of different bargaining units, and, most importantly, they are subject to entirely

different collective bargaining agreements which were negotiated independently from one

another.  The Plan argues that although both the Spokane and Woods Cross Claimants were denied the same benefits under the Plan, the language from each of the collective bargaining agreements relied upon by the Plan in denying the benefits is materially different.  The Plan claims that because the agreements are not identical in their material parts, there is no commonality between the Spokane and Woods Cross Claimants.[2]

The Court finds, however, that while the collective bargaining agreements are not identical in their terms, their relevant provisions do not differ materially from one another.  The Woods Cross Claimants' agreement provides that "all benefits arranged by the Company for its employees generally shall be available to employees covered by this Agreement." Local 8-578's Agreement, Art. VII, § 1 (emphasis added).  The Spokane Claimants' agreement similarly provides that "all benefits arranged by the Company for its employees as a whole, shall be available to all employees covered by this Agreement." Local 1-562's Agreement, Art. X (emphasis added).  The provision relied upon by the Plan in denying the Woods Cross Claimants' application for benefits is therefore nearly identical to the provision it relied upon in denying the Spokane Claimants' application.  The use of the term "as a whole" instead of "generally" cannot be said to amount to a material difference.  The term "general" is defined as

---

[2]The cases relied upon by the Plan in support of this assertion are factually distinguishable from the case at hand.  In *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998), the Court determined that the class lacked commonality to assert a collective breach of contract action where there existed multiple different contracts which contained materially different contract language and which varied from year to year and from class member to class member.  In *Sprague v. General Motors Corp.,* 133 F.3d 388 (6th Cir. 1998), the Court found that commonality was lacking where the putative class consisted of 50,000 members, each of whom had made an individual "side deal" with the Defendant based on different oral representations and documents.  Lastly, in *Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 95 F.R.D. 168 (D.C. Del. 1982), the Court found commonality lacking where the action required evaluating the contract at issue under the law of thirty-two different states and under a variety of factual setting occurring over a span of sixty years.  In the case at hand, however, each claimant is subject to only one of two collective bargaining agreements, the key provisions of which are essentially identical.

"involving, applicable to, or affecting the whole."  Merriam Webster's Collegiate Dictionary, 484 (10th ed. 1997).   The term "as a whole" and the word "generally," *i.e.,* "involving the whole," are essentially synonymous.  The collective bargaining agreements therefore do not, as the Plan argues, contain materially different terms.[3]

The fact that the collective bargaining agreements differ slightly from one another does not prevent a finding of commonality.

> In determining whether the typicality and commonality requirements have been fulfilled, either common questions of law or fact presented by the class will be deemed sufficient.  Factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist . . . every member of the class need not be in a situation identical to that of the named plaintiff.

*Milonas*, 691 F.2d at 938.  Although the Woods Cross Claimants and the Spokane Claimants are members of different unions in different states subject to different collective bargaining agreements, they have in common questions of law and fact.  All of the claimants were employees at facilities owned by Phillips Petroleum Company (or a subsidiary of Phillips Petroleum Company) and were laid off in connection with the merger between Phillips Petroleum Company and Conoco.  Each of the claimants applied for benefits under the Plan as a result of this layoff.  The Plan denied each of the claimants' applications for benefits on the exact same grounds–that they were members of a recognized or certified collective bargaining unit, and that the applicable collective bargaining agreement did not include coverage under the Plan.

---

[3]The Plan additionally argues that the collective bargaining agreements are materially different because the Spokane Claimants' agreement specifically includes as a benefit "Severance Pay" while the Woods Cross Claimants' agreement does not.  As the Plaintiffs point out, however, the listing of benefits present in the two agreements is only a list of examples of benefits made available to employees "generally" or "as a whole."  The list does not purport to be exhaustive.  The fact that "Severance Pay" is listed as a benefit in the Spokane Claimants' agreement, therefore, is not significant and does not constitute a material difference from the Woods Cross Claimants' agreement.

As explained above, the provisions in the collective bargaining agreements relied upon by the Plan in making its determination are only minutely different.  Because the claimants were denied benefits for the same stated reason, based on essentially the same contract provision, they have in common the legal question of whether they were improperly denied benefits under the Plan.  This question, in turn, encompasses the common questions of whether coverage under the Plan was included in the collective bargaining agreements and what the appropriate standard of review to be applied to the Plan Administrator's denial of benefits is.  The Court therefore finds that despite the factual differences between the claimants, the requirement of commonality has been met.

The typicality requirement is met, even if there are varying fact situations among individual members of the class, "so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory."  *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1189 (10th Cir. 1975).  As explained previously, despite the varying fact situations between the Spokane Claimants and the Woods Cross Claimants, the Plan denied each of the claimants' applications for benefits on the same grounds.  The Spokane Claimants' claims, therefore, are based on the same legal theory as the claims of the Woods Cross Claimants, including the named Plaintiffs.  Accordingly, the requirement of typicality has also been met.  The Court therefore concludes that amendment of the Complaint to expand the class definition to include the Spokane Claimants will not violate Rule 23(a).

B.    *Futility*

It is well-recognized that leave to amend a complaint pursuant to Federal Rule of Civil Procedure 15(a) should not be granted if the amendment "is ultimately futile."  *See Foman v.*

*Davis*, 371 U.S. 178, 182 (1962); *Bauchman for Bauchman v. West High School*, 132 F.3d 542, 562 (10th Cir. 1997).  The Plan asserts that because the Spokane Claimants knowingly failed to exhaust their administrative remedies under the Plan, they are barred from bringing suit in federal court.  *See Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1206 (10th Cir. 1990) (holding that company or plan-provided remedies are a prerequisite to seeking judicial relief).  Consequently, any attempt to amend the Complaint to add the Spokane Claimants to the class would be clearly futile.

The Plan's futility argument is based on their contention that they did not receive an appeal of the Plan Administrator's denial of the Spokane Claimants' benefits until January 13, 2005, approximately two months after the time for filing an appeal had run.  This fact is somewhat disputed.[4]  The Court finds, however, that regardless of whether the Spokane Claimants timely filed their appeal, amendment of the Complaint to add them to the class would not be futile.

A number of courts have recognized that "in the context of an ERISA class action, only the named plaintiffs must exhaust their administrative remedies."  *Thomas v. Smithkline Beecham Corp., et al*, 201 F.R.D. 386, 395 (E.D. Penn. 2001).  *See also Albermarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975) (holding that it is not necessary in a Title VII employment discrimination suit for all class members to exhaust administrative remedies in order to share in back pay or other relief); *Clarke v. Ford Motor Co.*,

---

[4]The Spokane Claimants' counsel alleges that he prepared an appeal of the Plan Administrator's denial of benefits on November 4, 2004 and believes that the appeal was sent to the Plan Committee on this date.  In a January 12, 2005 letter addressed to the Plan's General Counsel, however, the Spokane Claimants' counsel recognized that there was a possibility that due to administrative oversight, the appeal may never have been sent.  He accordingly enclosed a copy of the November 4, 2004 appeal in the January 12, 2005 letter.

220 F.R.D. 568, 576 (E.D. Wis. 2004) (holding that in an ERISA class action, only the class representative must satisfy exhaustion requirement); *Laurenzano v. Blue Cross Blue Shield of Mass.*, 134 F. Supp.2d 189, 210 (D. Mass. 2001) (holding same); 2 Herbert B. Newberg & Albert Conte, *Newberg on Class Actions* § 5:15 (4th ed. 2002).  The Court finds these cases persuasive. Requiring all class members to exhaust their administrative remedies prior to the bringing of a suit would "place an unnecessary procedural hurdle in the path of ERISA plaintiffs and, thus, contravene ERISA's goal of protecting the interests of participants in benefit plans by providing convenient access to the federal courts."  *Clarke*, 220 F.R.D. at 576.  The Court determines that in ERISA class actions only the named class representative must exhaust their administrative remedies in order to satisfy the exhaustion requirement.

It is undisputed that the named Plaintiffs properly exhausted their administrative remedies prior to bringing the above-captioned class action suit thereby alleviating the need for remaining class members to satisfy exhaustion requirements.  Therefore, regardless of whether the Spokane Claimants timely filed their appeal, amendment of the Complaint to add them to the class would not be futile.[5]  Because amending the Complaint to expand the class definition to include the Spokane Claimants would neither violate Rule 23(a) or be futile, the Court grants Plaintiffs leave to amend their Complaint as proposed.

---

[5]Because the Court has determined that amending the Complaint to add the Spokane Claimants would not be futile, it is unnecessary for the Court to determine whether the Spokane Claimants should be excused from their duty to exhaust their administrative remedies on the basis that it would have been futile for them to proceed with administrative action.  It is also unnecessary to determine what the proper remedy would be if the Spokane Claimants were not excused from this requirement.

**II.      Motion for Leave to File Second Amended Complaint.**

In a separate motion filed on March 18, 2005, the Plaintiffs request leave to amend their

Complaint to add a cause of action for breach of fiduciary duty against Joseph C. High, the

individual who at all relevant times acted as the Plan's administrator.  Because this Second

Motion was brought after the scheduling order deadline for amending pleadings had passed, the

Court must engage in a two-step analysis to determine whether to grant or deny the motion.

First, the Court must analyze whether the Plaintiffs have "good cause" for seeking modification

of the scheduling order.  *See* Fed. R. Civ. P. 16(b) (providing that a scheduling order "shall not

be modified except upon a showing of good cause.")   If "good cause" is found, the Court must

next analyze whether justice requires it to grant Plaintiffs leave to amend their Complaint to add

a new cause of action for breach of fiduciary duty.  *See* Fed. R. Civ. P. 15(a) (providing that leave

to amend "shall be freely given when justice so requires").

*A.      Federal Rule of Civil Procedure 16(b)*

Pursuant to Federal Rule of Civil Procedure 16(b), "Scheduling orders are not to be

modified by the trial court except when authorized by local rule upon a showing of good cause."

*SIL-FLO, Inc. v. SPHC, Inc.*, 917 F.2d 1507, 1518 (10th Cir. 1990).  In other words, the Court

may "modify the schedule on a showing of good cause if [the deadline] cannot reasonably be met

despite the diligence of the party seeking the extension."  Fed. R. Civ. P. 16(b) Advisory

Committee Notes to 1983 Amendment.  The first question before the Court, then, is whether

good cause exists for the Plaintiffs' failure to bring the Second Motion prior to the scheduling

order's February 11, 2005 deadline.

The Plan argues that Plaintiffs were not diligent in bringing the Second Motion because

they became aware of the facts on which they base their new cause of action approximately two

years before the original complaint was even filed.  In support of this claim, the Plan cites to an

October 5, 2002 letter and addressed to the Plan Administrator from Blaine Flinders and David

Brown, the named Plaintiffs.  The letter states:

> [I]n the March 2002 edition of the Work Force Stabilization Plan, we find the
> language had been changed to reflect the ineligibility of represented employees.
> This was after we negotiated a new [collective bargaining agreement] with the
> Company in February in which no new language was introduced that affected
> benefits or suggested any change in benefits.

The Plan contends that, in this letter, the Plaintiffs essentially made the same argument that they

are now seeking leave to make–that the Plan Administrator delayed distribution of the SPD until

after completion of collective bargaining.  In addition, the Plan provided Plaintiffs with a

complete set of documents related to the Plan, including all modifications to the SPD and the

dates of such modifications, prior to the commencement of this litigation.  The Plan therefore

asserts that Plaintiffs had all of the information necessary to recognize a claim for breach of

fiduciary duty before the original complaint was even filed.

The Plaintiffs claim, however, that they only recently obtained the information upon

which they rely in bringing their new cause of action.  During discovery, the Plan produced to the

Plaintiffs an e-mail between ConocoPhillips management employees which states "we prefer to

not sent the SPD to our represented employees at this time.  This will give us time to handle

discussions with the union properly." January 14, 2002 e-mail from R. Thomas Ayers to Alan S.

Bowles.  Plaintiffs argue that it was not until they analyzed this e-mail in relation to facts already

known that they realized the potential of an additional cause of action for breach of fiduciary

duty.

The Court finds that the October 5, 2002 letter relied upon by the Plan evidences only that the Plaintiffs were aware that the language in the SPD was not issued until after the completion of negotiations, not that the Plan Administrator delayed distribution of the SPD until after completion of the negotiations.  The Court is therefore persuaded that it was only after analyzing the January 14, 2002 e-mail that Plaintiffs realized the information may have been intentionally withheld by the Plan Administrator in breach of his fiduciary duty.

Although this e-mail was produced by the Plan to Plaintiffs on December 10, 2004, two months prior to the deadline, the Court finds that the Plaintiffs were not dilatory in failing to bring the Second Motion earlier.  The e-mail was produced along with over 300 other documents. In addition, over 200 documents were produced by the Plan in February and March of 2005. After analyzing these documents, the Plaintiffs researched applicable law in preparation for the bringing of a motion for summary judgment.  It was not until Plaintiffs undertook this research that they realized they had a viable cause of action for breach of fiduciary duty.  By this time, only three months had passed since the disclosure of the e-mail, and only a little more than a month had passed since the deadline for filing motions to amend pleadings.  Given these circumstances, the Court finds that good cause exists for extending the scheduling order so that the Plaintiffs may amend their Complaint to add a cause of action for breach of fiduciary duty.

      B.    *Federal Rule of Civil Procedure 15(a)*

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires."  In light of this lenient standard, denial of a motion for leave to amend is generally only justified upon the showing of "undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing

15

party, or futility of amendment, etc." *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed.2d 222 (1962)). The Plan argues that Plaintiffs' Second Motion should be denied on the basis that is unjustifiably untimely and would severely prejudice the Plan.[6]

Although courts have determined that "untimeliness alone is a sufficient reason to deny leave to amend," this is usually the case only where "the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). As explained previously, the Plaintiffs brought the Second Motion five weeks after the running of the deadline. This modest delay is explained by the fact that numerous documents were produced to Plaintiffs during the two months leading up to the deadline which had to be reviewed and then again analyzed in light of the research conducted by the Plaintiffs in preparing to bring a motion for summary judgment. It was not until this process was complete that Plaintiffs realized the need to bring a cause of action for breach of fiduciary duty. The Court finds that this five week delay by the Plaintiffs, in light of the circumstances, was not unreasonable. The fact that the Second Motion was untimely, therefore, does not justify a denial of Plaintiffs' motion for leave to amend the Complaint.

Most importantly, the Court finds that the Plan will not be unduly prejudiced by the addition of a cause of action for breach of fiduciary duty. Although discovery has been completed on Plaintiffs' original claim, no depositions were taken. The Plan, therefore, will not have to re-take any depositions as a result of the addition of a new cause of action. While the

---

[6]While the Plan argues that Plaintiffs' breach of fiduciary claim is based upon an erroneous assumption, it does not assert that the amendment would be futile. *See* Plan's Memorandum in Opposition to Motion for Leave to File Second Amended Complaint at 5, n. 1. The Court, therefore, does not address whether granting the Second Motion would be futile.  34

Plan may have to add to an already drafted dispositive motion, the addition of a new cause of action will not require the Plan to re-draft arguments relating to the original cause of action.

In addition, amendment of the Complaint to add a cause of action will not substantially delay resolution of the litigation where the Complaint is already being amended to expand the class to include the Spokane Claimants. The addition of new class members will result in a delay of the litigation. Additional delay as a result of the new cause of action will not unduly prejudice the Plan.

Plaintiffs, on the other hand, would be severely prejudiced by the Court's denial of their leave to amend the Complaint. If the Court were to deny Plaintiffs Second Motion, the Plaintiffs would be completely denied a determination of the merits of their cause of action for breach of fiduciary duty. This is not warranted, especially where the original class action was filed less than a year ago and there is no evidence that the Plaintiffs have been dilatory or have acted in bad faith. The Court therefore grants the Plaintiffs leave to amend their Complaint to add a cause of action for breach of fiduciary duty.

## CONCLUSION

For the foregoing reasons, and good cause appearing, Plaintiffs' Motion for Leave to File Amended Complaint is GRANTED and Plaintiffs' Motion for Leave to File Second Amended Complaint is GRANTED. The Court orders the Plaintiffs to submit a Proposed Order Amending Class Certification to include members of Local 1-562 who were denied benefits under the Plan on the basis that they were members of a recognized or certified collective bargaining unit by June 23, 2005. The Court further orders the parties to stipulate to and submit a proposed Amended Scheduling Order by July 5, 2005. In the event the parties cannot stipulate to a

proposed amended scheduling order, each party should submit its own proposed amended

scheduling order by this same date.

DATED this 13th day of June, 2005.

BY THE COURT:

DALE A. KIMBALL
United States District Judge