United States Court of Appeals for the Tenth Circuit
**OFFICE OF THE CLERK**
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303)844-3157

Elisabeth A. Shumaker
Clerk of Court

FILED   **Douglas E. Cressler**
U.S. DISTRICT COURT **Chief Deputy Clerk**

2007 AUG 27  P 2: 44

DISTRICT OF UTAH

BY:_____
        DEPUTY CLERK

August 23, 2007

Mr. D. Mark Jones, Clerk
United States District Court for the District of Utah
350 South Main Street
Room 204
Salt Lake City, UT 84101

          Re:     06-4133, Flinders v. Workforce
                  Dist/Ag docket:  2:04-CV-541-DAK

Dear Mr. Jones:

        Enclosed are a certified copy of the judgment and a copy of
the opinion filed in this case which are issued as the mandate of
this court.  See Fed. R. App. P. 41(a).  Please file it in records of
your court or agency.

        Please contact this office if you have questions.

                              Sincerely,

                              Elisabeth A. Shumaker
                              Clerk, Court of Appeals

                              By:_____
                                 Deputy Clerk

clk:kf

cc:    Scott A. Hagen
       Michael E. Blue
       Matthew M. Durham
       Justin B. Palmer
       David Morris Gossett
       Andrew L. Frey

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

BLAINE FLINDERS; DAVID BROWN,
on behalf of themselves and others
similarly situated,

      Plaintiffs - Appellants,

v.

WORKFORCE STABILIZATION PLAN
OF PHILLIPS PETROLEUM
COMPANY,

      Defendant - Appellee.

No. 06-4133
(D.C. No. 2:04-CV-541-DAK)

A true copy

Teste

Elisabeth A. Shumaker
Clerk, U.S. Court of
Appeals, Tenth Circuit

By

Deputy Clerk

---

## JUDGMENT

Filed July 3, 2007

---

Before **KELLY, HENRY,** and **LUCERO,** Circuit Judges.

---

This case originated in the District of Utah and was argued by counsel.

The judgment of that court is reversed. The case is remanded to the United States

District Court for the District of Utah for further proceedings in accordance with the opinion

of this court.

Entered for the Court
ELISABETH A. SHUMAKER, Clerk

by
Deputy Clerk

**F I L E D**
United States Court of Appeals
Tenth Circuit

**July 3, 2007**

Elisabeth A. Shumaker
Clerk of Court

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

———————————————————

BLAINE FLINDERS; DAVID
BROWN, on behalf of themselves and
others similarly situated,

      Plaintiffs - Appellants,

v.

WORKFORCE STABILIZATION
PLAN OF PHILLIPS PETROLEUM
COMPANY,

      Defendant - Appellee.

No. 06-4133

———————————————————

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:04-CV-541-DAK)**

———————————————————

Scott A. Hagen (and Michael E. Blue with him on the briefs), Ray, Quinney &
Nebeker, P.C, Salt Lake City, Utah, for Plaintiffs - Appellants.

Matthew M. Durham (and Justin B. Palmer with him on the brief), Stoel, Rives,
L.L.P., Salt Lake City, Utah, for Defendant - Appellee.

———————————————————

Before **KELLY, HENRY,** and **LUCERO,** Circuit Judges.

———————————————————

**KELLY,** Circuit Judge.

———————————————————

Plaintiffs-Appellants Blaine Flinders and David Brown, on behalf of themselves and a class of others similarly situated, (referred to collectively as "Plaintiffs") appeal the district court's grant of partial summary judgment in favor of Defendant-Appellee Workforce Stabilization Plan of Phillips Petroleum Company ("WFSP" or "the Plan"). Plaintiffs asserted claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), arguing that the Plan wrongfully denied them benefits. The parties filed cross motions for partial summary judgment on August 31, 2005. The district court granted the Plan's motion, finding that the Plan's determination that Plaintiffs were not "participants" in the WFSP was not arbitrary and capricious. Our jurisdiction arises under 28 U.S.C. § 1291, and we reverse and remand for an award of benefits.

<u>Background</u>

Plaintiffs constitute a class of former employees of the Phillips Petroleum Company ("the Company"). The class consists of members of collective bargaining units at two of the Company's plants: a refinery in Woods Cross, Utah and a terminal in Spokane, Washington. The Woods Cross plaintiffs filed suit against the Plan on June 14, 2004 to recover benefits under § 502(a)(1)(B) of ERISA. See 29 U.S.C. § 1132(a)(1)(B). The district court certified the class on November 4, 2004, which was later enlarged to include four Spokane plaintiffs.

- 2 -

The total amount of benefits sought by Plaintiffs is $6,701,626.32. Aplt. App. at 908. After the district court granted the Plan's motion for partial summary judgment, Plaintiffs sought leave to serve Joseph High, the Plan's administrator, and assert a claim for breach of fiduciary duty under § 502(a)(3) of ERISA. See 29 U.S.C. § 1132(a)(3). The district court denied the motion as futile on May 18, 2006. This appeal followed.

The Plan provides a substantial benefit payment to Company employees who are laid off as the result of a merger, specifically "[a] lump-sum payment equivalent to four weeks' pay for each year of service, with a minimum benefit of 16 weeks' pay and a maximum benefit of 104 weeks' pay." Aplt. App. at 118. It is financed using the general assets of "the company," which is defined as "Phillips Petroleum Company and all other [affiliated] companies which have adopted this plan." The Summary Plan Description ("SPD") furnished to employees[1] gives this description of the Plan's financing:

> The company pays the entire cost of the plan from its general assets. Employee contributions are not required or permitted. The company holds all funds used to provide benefits under the Work Force Stabilization Plan. The benefits will not be funded through a trust agreement or guaranteed by an insurance contract issued by an insurance carrier . . . .

Id. at 119.

---

[1] ERISA requires that a plan administrator furnish to each "participant covered under the plan and to each beneficiary who is receiving benefits under the plan . . . a summary plan description." 29 U.S.C. § 1021(a)(1).

The Plan expressly grants the Plan Administrator discretion to determine eligibility for benefits, subject to review by the Plan Committee. The Plan also grants the Plan Committee the power to "interpret and administer the Plan including the resolution of ambiguities, inconsistencies and omissions." Id. at 453. It further states that the "Committee shall have absolute discretion in carrying out its responsibilities." Id. The Plan Administrator and Plan Committee members are all senior executives and long-time employees of the Company, each having served with the Company for a number of years. Id. at 300-20, 902-07. They are compensated by salary and receive bonuses based on the Company's performance. The chair of the Plan Committee is John Carrig, the Company's chief financial officer.

The Plan's coverage rules (as contained in the March 12, 2002 SPD) state, in relevant part:

> You become a participant and are eligible to receive benefits if you meet all of these conditions:
>
> - You are laid off during the window period.
>
> - You are an active regular full-time or active regular part-time employee of Phillips or one of the participating subsidiaries on the company's direct U.S. dollar payroll. The following groups of employees are not eligible to participate:
>
>   -Retail marketing store or outlet personnel;
>
>   -Any employee of Phillips Pipe Line Company whose job is in the Pipe Line Relief Labor Pool

-4-

>—Any member of a recognized or certified collective bargaining unit unless coverage under the <u>plan</u> is included under the collective bargaining agreement; and
>
>—Tosco heritage employees notified of layoff prior to Dec. 7, 2001.

<u>Id.</u> at 118.

The Woods Cross CBA states as follows:

>Except as hereinafter limited, all benefits arranged by the Company for its employees generally shall be available to employees covered by this Agreement.  "Security Plans" and "Benefits" include among others:
>
>- Unavoidable Absence Benefits Plan
>- Group Life Insurance and Total and Permanent Disability Insurance
>- Long Term Disability Insurance
>- Comprehensive Medical and Hospital Expense Plan
>- Phillips Retirement Plan
>- Annual Military Training Leave of Absence and Emergency Call-outs
>- Civil Leave of Absence
>- Active Duty Military Leave and Job Reinstatement Policy
>- Thrift plan
>- Lost Time Due to Jury Duty or as Witness in Court Proceedings Benefits
>- Vacations
>- Dental Assistance Plan
>- Layoff Plan
>- Long Term Stock Savings Plan

<u>Id.</u> at 125.

The Spokane CBA is substantially similar to the Woods Cross CBA, and it states that "all benefits arranged by the Company for its employees as a whole,

shall be available to all employees covered by this Agreement." Id. at 139. The

Spokane CBA also gives a list of exemplary benefits, which does not include the

WFSP.

An exclusion for unionized employees first appeared in the SPD on March

12, 2002.[2] The Woods Cross CBA was completed over a month earlier, on

February 4, 2002. Shortly after March 12, 2002, the Company announced a

proposed merger with Conoco. As a result of the merger, Plaintiffs were laid-off

on June 1, 2003 when the refinery and terminal were sold to Holly Corporation.

Plaintiffs were immediately offered employment by Holly Corporation. A new

company, ConocoPhillips, was formed on August 30, 2002.

A.   The Woods Cross Plaintiffs

Believing they were entitled to WFSP benefits, the Woods Cross plaintiffs

formally applied for benefits on June 5, 2003. On September 24, 2003, the Plan

Administrator denied the benefits, giving the following rationale:

> This list of benefits and policies that are applicable to the
> employees covered by the [Woods Cross CBA] is quite detailed and
> although reference is made to the Layoff Plan, another severance
> benefit plan of Phillips Petroleum, there is no reference to, or
> inclusion of, the Work Force Stabilization Plan, as required by the
> WFSP definitions for employee and participant. Additionally,
> Section 2 of Article VII of the Bargaining Agreement further states:

-----

[2] The Plan points out that the exclusion has been part of the plan document
itself since 1991 and that the SPD specifically states that it is not meant to
include all details of the Plan. Nevertheless, ERISA requires that the SPD include
"the plan's requirements respecting eligibility." 29 U.S.C. § 1022(b).

-6-

> "The conditions, rules, and regulations of such security plans and benefits as established by Phillips Petroleum Company shall determine all questions arising there under.["] Thus, it is my determination that the WFSP is not included under the Bargaining Agreement as required by the terms of the WFSP and therefore, Claimants are not covered by the WFSP.

Id. at 969 (emphasis added).

The Woods Cross plaintiffs appealed the denial of their claims to the Plan Committee on October 29, 2003. The appeal letter responded to each point raised in the Plan Administrator's denial letter, including the apparent determinative rationale that "although reference is made to the Layoff Plan, another severance benefit plan of Phillips Petroleum, there is no reference to, or inclusion of, the Work Force Stabilization Plan," in the Woods Cross CBA. The appeal letter stated:

> Although, as [the Plan Administrator] pointed out in his letter, this list of plans and benefits [from the Woods Cross CBA] is "quite detailed," it is not exhaustive. In fact, it is expressly stated that the list does not include every plan or benefit. The language of the collective bargaining agreement is that the Claimants are entitled to "all benefits arranged by the Company for its employees generally," and that the benefits available include "among others," those specifically itemized in the list. There is no dispute that benefits under this Plan have been available to all Phillips Petroleum Company employees generally, and the list, because it is preceded by the words "among others," expressly includes other plans not specifically mentioned. Under the plain language of the collective bargaining agreement, the Claimants are therefore entitled to "all benefits arranged by the Company for its employees generally," which include benefits under the Plan. . . .

> Furthermore, the Claimants have been allowed to participate in employee benefit plans that were not specifically listed in the

> collective bargaining agreement. Such plans include the Scholarship
> Plan, the Death Gratuity Plan, the Long-Term Care Plan, the
> Employee Assistance Plan, and, more recently, the Performance 66
> Account, among others.

Id. at 165-66.

A packet of materials for advance review was prepared for the Plan
Committee which included the appeal letter. The "Overview" section of the
packet (which is more accurately described as a recommendation) stated that:
"There is no reference to, or inclusion of, the WFSP in the collective bargaining
agreement. The Claimants are not eligible for the WFSP." Id. at 951. The
packet contained no other response to the arguments asserted in the appeal letter.
Id. at 177-229. To be sure, the packet outlined each of the Woods Cross
plaintiffs' arguments but it did not provide a response to any of them, aside from
the general statement in the "Overview" that the WFSP was not referenced or
included in the CBA. In addition, the Plan's subsequent litigation position–that
the WFSP is not a benefit that was "arranged by the Company for its employees
generally"–is nowhere specifically articulated in the appeal packet. The only
relevant reference to the Plan's availability is a statement in the Woods Cross
plaintiffs' appeal letter which reads: "There is no dispute that benefits under this
Plan have been available to all . . . employees generally . . . ." Id. at 206.

The minutes of the Plan Committee meeting state the following, in
pertinent part:

- 8 -

The third agenda item was the Scott Hagen [counsel for Employees] appeal on behalf of the members (Claimants) of PACE Local No. 8-578 to the Plan Administrator's denial of benefits under the Work Force Stabilization Plan (Plan). The Plan excludes members of a recognized or certified collective bargaining unit as being eligible for severance benefits unless "the Plan is included under the collective bargaining agreement." There is no reference to, or inclusion of, the Work Force Stabilization Plan in the collective bargaining agreement.

Connie Brandon presented an overview of the key events of the appeal. The Committee reviewed and discussed Mr. Hagen's appeal, the relevant terms of the Plan and the relevant terms of the "Agreement Between Phillips Petroleum Company and Paper, Allied-Industrial, Chemical and Energy Workers International Union and its Local No. 8-578." The Union had adopted the Phillips Layoff Plan in negotiations, but had not adopted the Plan.

After discussion, the Committee determined the Claimants were not eligible for severance benefits under the Work Force Stabilization Plan. John Carrig made the motion to deny the appeal, Rand Berney seconded the motion, and the Committee voted unanimously to deny the appeal for the Plan benefits. The Committee concurred with the Plan Administrator's decision.

Id. at 325-26 (emphasis added). These minutes make no specific reference to the

Plan's litigation position that the WFSP is not a plan arranged by the Company

for its employees generally. Apparently, the Plan Committee simply agreed with

the proposition that the WFSP had not been "adopted" by the Union; i.e., that the

WFSP was not "included" in the CBA.

The Plan Committee drafted a denial letter dated December 18, 2003.[3] In

---

[3] The parties dispute when the letter was actually mailed, but that fact is immaterial to our review.

explaining its denial, the Plan Committee did not contest any of the factual assertions in the Woods Cross plaintiffs' appeal letter but instead stated: "The Committee does not agree with your interpretation of the language contained in the collective bargaining agreement with respect to inclusion of the plan." Id. at 169. It then relied exclusively on the Plan Administrator's determination to deny the claims, stating that "the Committee is in agreement with the reasons set forth in the determination of [the Plan Administrator's] letter of September 24, 2003." Id. at 170. The Woods Cross plaintiffs then filed suit on June 14, 2004, with Mr. Flinders and Mr. Brown serving as class representatives.

B.    The Spokane Plaintiffs

The Spokane plaintiffs initially sought benefits by inquiring directly with the Company, outside the formal claims administration process set out in the Plan's SPD. They received a written response from the Company on August 22, 2003, which stated as follows:

> These issues [including the request for Plan benefits] were discussed again at the June 16, 2003 meeting. The following is the company's final position on these issues.
>
> * * *
>
> 3. The Work Force Stabilization Summary Plan Description states "the following groups of employees are not eligible to participate: any member of a recognized or certified collective bargaining unit unless coverage under the plan is included under the collective bargaining agreement." As the collective bargaining agreement does not include coverage under Work Force Stabilization, [sic] the represented employees are not eligible for benefits under Work Force Stabilization.

- 10 -

Id. at 233-34.

The Spokane plaintiffs asked the Company to reconsider, but received no response. Accordingly, on July 14, 2004 (seven months after the final denial of the Woods Cross plaintiffs' claims), the Spokane plaintiffs formally applied for benefits from the Plan by a letter addressed to the Plan Administrator. The Plan Administrator denied the claims in a letter dated September 14, 2004, giving this explanation:

> To summarize my findings, the Plan excludes employees who are members of a recognized or certified collective bargaining unit unless the Plan is included in the collective bargaining agreement. The collective bargaining agreement applicable to your bargaining unit, PACE Local 8-562 does not include the Plan; therefore, the employees of that bargaining unit are not participants under the plan or eligible for benefits.

Id. at 239. The explanation also explicitly stated, for the first time, that the WFSP was not arranged by the Company for its employees "as a whole." Id. at 244.

The Spokane plaintiffs appealed the denial of benefits in a letter dated November 3, 2004. The Plan Administrator, however, denied the appeal summarily on the ground that it was submitted late. Id. at 275-76. The Spokane plaintiffs were then added to the lawsuit and the class by way of an amended complaint on August 5, 2005.

C.    The Proceedings Below

In district court, the parties disputed the appropriate standard of review.

- 11 -

The Plan argued that, because the WFSP gives the Plan Administrator and the Plan Committee discretionary authority to determine eligibility, the burden should be on Plaintiffs to show that the denial of benefits was arbitrary and capricious. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Chambers v. Family Health Plan Corp., 100 F.3d 818, 825 (10th Cir. 1996). Plaintiffs countered that the Plan Committee members had a serious conflict of interest and that there were significant irregularities in the claims process. Consequently, Plaintiffs argued the burden was on the Plan to show its denial of the benefits was reasonable and supported by substantial evidence. See Fought v. UNUM Life Ins. Co., 379 F.3d 997, 1006 (10th Cir. 2004). The district court concluded that the Plan Committee members had only a standard conflict of interest and that there were no procedural irregularities. Accordingly, it reviewed the decision denying benefits under the arbitrary and capricious standard, "adjusted only slightly for the standard conflict [of interest]." Flinders v. Workforce Stabilization Plan, No. 2:04-CV-541, 2006 WL 641524, at * 8 (D. Utah Mar. 10, 2006).

On its merits review, the district court affirmed the denial of benefits. Regardless of the standard of review, it considered and agreed with the Plan's argument that the WFSP was not arranged by the Company for its employees generally and therefore was not included in the CBA. Id. at *11. It reached this conclusion because the WFSP excluded certain classes of employees (aside from union workers) and was only triggered upon the happening of a merger. Id. at

- 12 -

*10. Furthermore, the district court granted the Plan's motion to strike the alleged statement of Jim Nokes, a Company administrator, as unreliable double hearsay. Id. at *11. It also granted the Plan's motion to strike a Yahoo! finance report showing that the Plan Committee members owned stock in the Company. Id.

On appeal, Plaintiffs argue that the district court erred in (1) utilizing the arbitrary and capricious standard of review without any adjustment for a serious conflict of interest or a serious procedural irregularity and (2) holding that the Plan's decision denying benefits on the ground that Plaintiffs were not participants was arbitrary and capricious. In addition, Plaintiffs contend that the district court abused its discretion in excluding the alleged statement of Jim Nokes and the Yahoo! finance report. We consider these arguments below.

## Discussion

### I. The Standard of Review

"Summary judgment orders are reviewed de novo, using the same standards as applied by the district court." Pitman v. Blue Cross & Blue Shield of Okla., 217 F.3d 1291, 1295 (10th Cir. 2000). A denial of benefits covered by ERISA "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone, 489 U.S. at 115. If the

- 13 -

benefit plan gives discretion to a plan administrator, then a decision denying benefits is typically reviewed under an arbitrary and capricious standard. Fought, 379 F.3d at 1003.  Such review is limited to "determining whether the . . . interpretation [of the plan] was reasonable and made in good faith." Id.

If, however, a plan administrator operates under an inherent or proven conflict of interest or there is a serious procedural irregularity in the administrative process, it is necessary to adjust the standard of review. Id. at 1006.  Effectively, this court has crafted a "sliding scale approach" where the "reviewing court will always apply an arbitrary and capricious standard, but the court must decrease the level of deference given . . . in proportion to the seriousness of the conflict." Chambers, 100 F.3d at 825-26.  If a plaintiff can prove a serious conflict of interest or the existence of a serious procedural irregularity, then the burden shifts to the plan administrator to prove the reasonableness of its decision under the arbitrary and capricious standard. Fought, 379 F.3d at 1006.  When the burden shifts in this manner, the plan administrator "must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." Id.  "The district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest." Id.

- 14 -

Plaintiffs argue that there was a serious conflict of interest requiring reversal of the burden of proof because: (1) the WFSP is not simply self-funded, it is "unfunded," with benefits being paid directly by the Company as needed, (2) the Plan Administrator and Plan Committee members are all paid employees and stockholders in the Company, (3) John Carrig, the Plan Committee chairman (and the Company's CFO), had an incentive to cut costs due to the impending merger, and (4) when viewed in relation to the price of the sale of the Woods Cross Refinery ($25 million), the cost of benefits sought ($6.4 million) would have had a significant impact on the Company. Plaintiffs also argue that there was a serious procedural irregularity because: (1) the denial of their claims was predetermined, (2) their claims were rejected in summary fashion without response to their substantive arguments, and (3) the Plan asserted a new ground for denying benefits in district court that was not articulated in the administrative record—namely that the WFSP was not arranged by the Company for its employees generally. We need not address whether there was as a serious conflict of interest or a serious procedural irregularity because we conclude that the Plan's asserted rationale for denying Plaintiffs claims is unreasonable under any standard of review.

II.    The Plan's Rationale For Denying the Claims

In reviewing a plan administrator's decision, we may only consider the evidence and arguments that appear in the administrative record. <u>Sandoval v.</u>

- 15 -

Aetna Life and Cas. Ins. Co., 967 F.2d 377, 380 (10th Cir. 1992); see also King v. Hartford Life and Accident Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) ("[A] reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider post hoc rationales."). This means that, when reviewing a plan administrator's decision to deny benefits, we consider only the rationale asserted by the plan administrator in the administrative record and determine whether the decision, based on the asserted rationale, was arbitrary and capricious.

To determine whether a plan administrator considered and asserted a particular rationale, we look only to those rationales that were specifically articulated in the administrative record as the basis for denying a claim. See 29 U.S.C. § 1133(1) (noting that a claim denial must "set[] forth the specific reasons for such denial, written in a manner calculated to be understood by the participant") (emphasis added); see also Schadler v. Anthem Life Ins. Co., 147 F.3d 388, 394 (5th Cir. 1998); Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 158 (4th Cir. 1993); White v. Jacobs Eng'g Group Long Term Disability Benefit Plan, 896 F.2d 344, 350 (9th Cir. 1990); Richardson v. Cent. States, Se. and Sw. Areas Pension Fund, 645 F.2d 660, 665 (8th Cir. 1981). The reason for this rule is apparent– "[w]e will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of

- 16 -

litigation." Marolt v. Alliant Techsystems, Inc., 146 F.3d 617, 620 (8th Cir. 1998). This is consistent with the converse rule that a claimant may not urge new grounds outside the administrative record that would support the award of benefits. Sandoval, 967 F.2d at 381.

In district court, the Plan argued that Plaintiffs are not participants in the WFSP because the Plan is not "arranged by the Company for its employees generally." See Flinders, 2006 WL 641524, at *9. We have reviewed the record and can find no evidence that this rationale was considered or specifically articulated by the Plan in the administrative proceeding. Had the Plan actually considered this rationale below, the administrative record would likely have contained information and arguments regarding the WFSP's availability, but it does not. See Schadler, 147 F.3d at 397 n.10 ("[I]n many cases the factual development that takes place at the administrative level will differ depending on the plan provisions upon which the administrator relies to deny benefits."). Indeed, the lack of any factual discussion of the Plan's availability indicates that the denial of benefits likely hinged solely on the Plan's interpretation that the WFSP's eligibility language required that it be specifically named in the list of example benefits contained in the CBA. See Aplt. App. at 169 ("The Committee does not agree with your interpretation of the language contained in the collective bargaining agreement with respect to inclusion of the Plan.") (emphasis added).

The Plan argues that there is evidence that the Plan Administrator and the

-17-

Plan Committee considered Plaintiffs' "argument" that the WFSP is arranged by the Company for its employees generally and rejected it. The Plan argues that because Plaintiffs asserted the undisputed fact that the WFSP is arranged by the Company for its employees generally, and the Plan Administrator and Plan Committee denied benefits anyway, the Plan Administrator and Plan Committee must have concluded that the WFSP was not arranged by the Company for its employees generally.[4]

This conclusion is incorrect. Plaintiffs' statement that there is no dispute that the WFSP is arranged by the Company for its employees generally is only what it purports to be: an assertion of an undisputed fact in support of awarding benefits, not an argument supporting the denial of benefits. The fact that Plaintiffs' undisputed fact was never challenged or rebutted (let alone mentioned) is telling. To be sure, a plan administrator is free to reject an undisputed fact urged by a claimant, but such a rejection must be articulated and have a factual basis. See Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1282 (10th Cir. 2002) (indicating that a plan administrator's factual determinations must be

---

[4] Indeed, this fact suggests the Plan likely did not consider the WFSP's availability. After all, Plaintiffs asserted the uncontested fact that the Plan was arranged by the Company for its employees generally in their appeal letter, after the Plan Administrator had denied their claims. If anything, this should have indicated to the Plan Committee that Plaintiffs viewed the Plan Administrator's decision as resting solely on the fact that the WFSP was not listed as an example benefit in the CBA. Yet, in its denial letter, the Plan Committee still did not discuss the Plan's availability.

supported by substantial evidence to survive arbitrary and capricious review). It would be manifestly unfair to hold that Plaintiffs' assertion of an undisputed fact was necessarily considered and rejected by the Plan Administrator and Plan Committee simply because Plaintiffs noted that the fact was undisputed.

The district court relied on Gallo v. Amoco Corp., 102 F.3d 918, 922-23 (7th Cir. 1996), to hold that the Plan's conclusion that the WFSP was not included in the CBA was sufficient to preserve (for our review) any supporting rationale. See Flinders, 2006 WL 641524, at *7. Gallo concerned whether an employee's "high-three" years of earnings used to figure an annuity included payments in lieu of vacation. The plan document was not entirely clear, but since 1939 the company had not treated such payments as earnings. When the employee appealed, the plan administrator stated that the company consistently interpreted the plan to exclude such payments and that the interpretation was necessary to avoid double counting. Id. at 920-21. On appeal, the Seventh Circuit concluded that the denial was adequate. It held that the plan's reason for denying benefits "was sufficient explanation to enable Gallo to formulate his further challenge to the denial." Id. at 923.

While a plan administrator may not be required to give "the reasoning behind the reasons," id. at 922, the plan administrator still must identify the specific reason for denying benefits. Here, the Plan Administrator denied benefits because "there is no reference to, or inclusion of, the [WFSP in the CBA]." The

- 19 -

phrase "there is no reference to" sufficiently articulates the Plan's rationale that

the WFSP had to be included in the list of example benefits to be included in the

CBA. But the phrase "there is no . . . inclusion of" fails to articulate the rationale

that the WFSP was not arranged by the Company for its employees generally. In

fact, this phrase merely restates the Plan's general eligibility criteria. See

Skretvedt v. E.I. Dupont de Nemours & Co., 268 F.3d 167, 177 n.8 (3d Cir. 2001)

(criticizing a denial letter that merely restated the requirements of a benefit plan

and then stated summarily that a claimant failed to meet them); VanderKlok v.

Provident Life & Accident Ins. Co., 956 F.2d 610, 616 (6th Cir. 1992) (same);

Wolfe v. J.C. Penney Co., 710 F.2d 388, 393 (7th Cir. 1983) (same); see also

Richardson, 896 F.2d at 665 ("Bald-faced conclusions do not satisfy this

requirement."). Only once the case was in district court did the Plan finally

articulate the rationale that the WFSP was not arranged by the Company for its

employees generally.

Consequently, Gallo is inapposite. In that case, the company consistently

articulated the same reason for denying benefits from the minute the

administrative process began. Furthermore, the plan at issue in Gallo was

ambiguous regarding the treatment of "pay in lieu of vacation," and the company

specifically offered its interpretation. In this case, the WFSP's eligibility

language is not at all ambiguous, as discussed infra, and the rationale asserted by

the Plan in litigation differs significantly from that which it asserted in the

- 20 -

administrative process. Were we to apply <u>Gallo</u> in a case like this, a plan administrator could simply treat the administrative process as a trial run and offer a post hoc rationale in district court. In addition, such a practice would result in an incomplete administrative record.

The Plan does cite to a portion of the Plan Administrator's letter denying the Spokane plaintiffs' claims that states "[WFSP] . . . is clearly not severance pay that is arranged for employees 'as a whole' . . . ." Aplt. App. at 468. But that letter was sent on September 24, 2004, <u>after</u> the Woods Cross plaintiffs had already filed suit. Thus, it is not even part of the relevant administrative record. <u>See</u> <u>Kalish v. Liberty Life Assur. Co.</u>, 419 F.3d 501, 511 (6th Cir. 2005) (noting that the administrative record consists of all information submitted to the fiduciary before the final denial).[5] It was improper for the district court to consider the rationale that the WFSP was not arranged by the Company for its employees generally. Instead, the Plan's decision to deny benefits must stand or fall on its articulated rationale alone.

III.    The Plan's Denial of Benefits Was Arbitrary and Capricious

---

[5] Furthermore, the Spokane plaintiffs' administrative appeal is not actually relevant because, absent an abuse of discretion by the trial judge, only the class representatives must exhaust their administrative claims, and the class representatives are Woods Cross plaintiffs. <u>In re Household Int'l Tax Reducation Plan</u>, 441 F.3d 500, 501-02 (7th Cir. 2006). To the extent the Plan challenges that the Spokane plaintiffs should not have been added to the class, the Plan raised this issue before the district court but has not challenged the district court's adverse determination on appeal.

-21-

Under the arbitrary and capricious standard, we must determine whether the

Plan's decision to deny benefits based on its interpretation of the WFSP and CBA

was "reasonable and made in good faith." Fought, 379 F.3d at 1003. In

conducting this review, we typically consider whether: (1) the decision was the

result of a "reasoned and principled process," (2) is "consistent with any prior

interpretations by the plan administrator," (3) is "reasonable in light of any

external standards," and (4) is "consistent with the purposes of the plan." Id. We

need not determine that the Plan's interpretation was the only logical one, nor

even the best one. Finley v. Hewlett-Packard Co. Employee Benefits Org. Income

Protection Plan, 379 F.3d 1168, 1176 (10th Cir. 2004). Instead, the decision will

be upheld "unless it is not grounded an any reasonable basis." Id.

In this case, the arbitrary and capricious review encompasses the contract

law standard of ambiguity. A provision of a contract is ambiguous if it

susceptible to more than one reasonable interpretation. Hickman v. GEM Ins.

Co., 299 F.3d 1208, 1212 (10th Cir. 2002). A decision denying benefits based on

an interpretation of an ERISA provision survives arbitrary and capricious review

so long as the interpretation is reasonable. Finely, 379 F.3d at 1176.

Consequently, if a plan provision is ambiguous, and the plan administrator adopts

one of two or more reasonable interpretations, then the plan administrator's

decision to deny benefits based on that interpretation survives arbitrary and

capricious review. To the contrary, if the plan provision is unambiguous, and the

- 22 -

plan administrator's interpretation differs from the unambiguous meaning, then the plan administrator's interpretation is unreasonable, and the decision to deny benefits based on that interpretation is arbitrary and capricious. See Swaback v. Am. Info. Techs. Corp., 103 F.3d 535, 540 (7th Cir. 1996); Lickteig v. Bus. Men's Assurance Co. of Am., 61 F.3d 579, 585 (8th Cir. 1995); Lockhart v. United Mine Workers 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir. 1993). Thus, the starting point in this and similar cases is to determine whether the relevant plan provision is ambiguous. See Hickman, 299 F.3d at 1212. If we determine that the plan provision is unambiguous, then we must construe it as a matter of law. Id.

In determining whether the WFSP's eligibility language is ambiguous, the language must be given "its common and ordinary meaning as a reasonable person in the position of the plan participant would have understood the words to mean." Id. (emphasis added). The WFSP states: "Any member of a recognized or certified collective bargaining unit [shall not be eligible to participate] unless coverage under the plan is included under the collective bargaining agreement." Aplt. App. at 118. The Woods Cross CBA states: "Except as hereinafter limited, all benefits arranged by the Company for its employees generally shall be available to employees covered by this Agreement." Id. at 125 (emphasis added). The CBA states that included plans and benefits "include among others: [some fourteen listed examples]." Id. The language in the Spokane CBA is essentially

- 23 -

identical.

These provisions are unambiguous. A union employee is covered by the WFSP, so long as the WFSP is "included under the collective bargaining agreement." The CBA contains a catch-all provision stating that all benefits "arranged by the Company for its employees generally" shall be available to unionized employees. The CBA then lists a number of example benefits, but those listed benefits are, by inclusion of the language "among others" not exclusive. Consequently, Plaintiffs are participants in the WFSP so long as it is "arranged by the Company for its employees generally."

The Company's articulated rationale for denying coverage, however, was that the "list of benefits and policies that are applicable to the employees covered by the [Woods Cross CBA] is quite detailed and although reference is made to the Layoff Plan, another severance benefit plan of Phillips Petroleum, there is no reference to, or inclusion of, the Work Force Stabilization Plan." Id. at 969 (emphasis added). This interpretation of the WFSP and CBA is unreasonable because it conflicts with the unambiguous language of the catch-all provision and the express statement that the example benefits listed are illustrative rather than exclusive. In the Plan's interpretation, language of inclusion has become language of exclusion. The Plan counters that "coverage under the Plan cannot be included in the CBAs by implication." Aplee. Br. at 43. Even accepting this principle, the CBA expressly includes all benefits that are arranged by the

- 24 -

Company for its employees generally. Consequently, the Plan's decision to deny benefits based on its interpretation of the WFSP and CBA is arbitrary and capricious.

IV.   The Appropriate Remedy

When a plan administrator's decision is overturned as arbitrary and capricious, we may either remand the case to the plan administrator for a renewed evaluation of the claimant's case or we may order an award of benefits. DeGrado v. Jefferson Pilot Fin. Ins. Co., 451 F.3d 1161, 1175 (10th Cir. 2006). "Which of these two remedies is proper in a given case, however, depends upon the specific flaws in the plan administrator's decision." Id. If the plan administrator failed to make adequate factual findings or failed to adequately explain the grounds for the decision, then the proper remedy is to remand the case for further findings or additional explanation. Caldwell, 287 F.3d at 1288. In contrast, if the evidence in the record clearly shows that the claimant is entitled to benefits, an order awarding such benefits is appropriate. See Buffonge v. Prudential Ins. Co. of Am., 426 F.3d 20, 31 (1st Cir. 2005); Caldwell, 287 F.3d at 1289.

In this case, the Plan Administrator erred by unreasonably interpreting the WFSP and CBA to require that the WFSP be specifically named in the list of example benefits. The other ground upon which to deny Plaintiffs benefits now urged by the Plan is that the WFSP was not arranged by the Company for its employees generally. We did not consider this argument in our merits review

- 25 -

because it was not asserted in the administrative record. But we cannot ignore it for purposes of formulating an appropriate remedy. To be sure, we are aware that "it is not th[is] court's function <u>ab initio</u> to apply the correct standard to the participant's claim." <u>King</u>, 414 F.3d at 1005. This case is unique, however, because the Plan (through its briefs) has stated quite clearly that it considers the WFSP not to have been arranged by the Company for its employees generally. The Plan's briefing on the matter is extensive, and any doubt about how the Plan might exercise its discretion on remand is eliminated by its treatment of the Spokane plaintiffs' claims. Consequently, if the Plan's position on the WFSP's availability is untenable, there is no point in remanding the case so that the Plan can again deny benefits, only to be reversed a second time on appeal. <u>See</u> <u>Comm. for First Amendment v. Campbell</u>, 962 F.2d 1517, 1525 (10th Cir. 1992) (noting that this court is not required to remand in futility).

Based on the plain language of the WFSP and the relevant facts and arguments asserted by the parties in their briefs, we conclude that it would be patently unreasonable, under any standard of review, for the Plan to deny Plaintiffs coverage on the basis that the WFSP is not arranged by the Company for its employees generally. In its brief, the Plan argues that the WFSP is not arranged by the Company for its employees generally because it only applies to active employees and specifically excludes several groups of employees,

- 26 -

including union members whose CBA does not include the WFSP.[6]   The Plan also argues that the WFSP is not arranged by the Company for its employees generally because the WFSP is contingent on the occurrence of a particular event, namely a lay-off as defined in the WFSP.  Because such an event might never occur, argues the Plan, the WFSP is not arranged by the Company for its employees generally.

This latter argument is specious.  Of the fourteen example benefits listed in the CBA, all are triggered upon the happening of a contingency.  For example, the "Long Term Disability Insurance" benefit is only triggered when a covered employee suffers a long-term disability.  Similarly, the "Active Duty Military Leave and Job Reinstatement Policy" is only triggered when a covered employee is called to active military service.  Likewise, the "Dental Assistance Plan" is only triggered when a covered employee undergoes certain dental procedures.  Taken at face value, the Plan's reasoning leads to the absurd conclusion that the dental plan is not arranged by the Company for its employees generally because not all employees will need root canals, fillings, or bridgework.

Focusing only on the eligibility language of the WFSP, the Plan's argument

---

[6] As discussed earlier, other excluded groups include "retail marking store or outlet personnel . . . [a]ny employee of Phillips Pipe Line Company whose job is in the Pipe Line Relief Labor Pool . . . Tosco heritage employees notified of layoff prior to Dec. 7, 2001," and any employee on an approved "Leave of Absence."  Aplt. App. at 118.

that the WFSP is not arranged by the Company for its employees generally
because it contains certain exclusions is barely colorable. The Plan ignores the
plain meaning of the word "generally" and instead substitutes "universally" in its
place. That there are several exclusions in the WFSP is irrelevant, so long as the
WFSP covers enough employees to be "generally" available, which the American
Heritage Dictionary defines as "widely," or "for the most part." generally The
American Heritage Dictionary of the English Language (4th ed. 2004). In other
words, the WFSP need not cover every Company employee in order to be
arranged by the Company for its employees generally.

      When considered in light of the facts put forward by Plaintiffs in the
district court, however, the Plan's argument regarding the exclusions is simply
untenable.[7]  For example, for several years prior to the merger, the WFSP was
included in a large red binder of SPDs that was labeled "YES" for "Your Extra
Security." In the years prior to the merger, Plaintiffs had participated in every
other YES benefit plan. Plaintiffs also received periodic updates to each YES
benefit plan, including the WFSP, which were accompanied by transmittal letters
identifying Plaintiffs as participants.[8]

---

      [7] While, in its brief, the Plan disagrees with the conclusion to be drawn
from the facts asserted by Plaintiffs, it never disagrees with the facts themselves.
Accordingly, we assume the Plan has no dispute with Plaintiffs' version of the
facts regarding the Plan's availability.

      [8] The Plan argues that the Plan Committee members did not personally
                                                              (continued...)

Furthermore, many of the YES benefit plans contain exclusions similar to those in the WFSP. Taking the medical plan as an example, the plan excludes seven classes of employees, including certain retail marketing employees, contract employees, certain non-U.S. employees working in their home countries, and union members whose CBA does not include the plan. See Aplt. App. at 785. Likewise, the dental plan excludes six classes of employees, including certain retail marketing employees, employees of a company that has not adopted the plan, temporary, intermittent, leased or contract employees, members of the Phillips Pipe Line Company Pipe Line Relief Labor Pool, non-U.S. employees working in their home countries, and union members whose CBA does not include the plan. See id. at 787. Nevertheless, Plaintiffs were always allowed to participate in the medical and dental plans, along with every other YES benefit plan. And while the Plan states that no union member has ever received benefits under the WFSP, prior to the merger with Conoco, there had never been a change in control that would have triggered benefits under the WFSP for any covered employee. Simply put, there is no precedent for excluding Plaintiffs from the WFSP.

---

[8](...continued)
determine who received the YES binders. This argument is unpersuasive because plan fiduciaries are "legally responsible both for [their] own decisions and also for decisions made by [their] agents." Geddes v. United Staffing Alliance Employee Med. Plan, 469 F.3d 919, 931 (10th Cir. 2006).

Nor are we convinced by the Plan's argument that no other YES benefit plan contains the same exclusions as the WFSP. We have reviewed the exclusions contained in the other benefit plans and many are substantially similar or even broader than the exclusions in the WFSP. Furthermore, it is irrelevant just what specific classes of employees are excluded by the Plan, so long as the Plan covers enough employees to be arranged by the Company for its employees generally. The Plan has not articulated any logical principle for treating the WFSP differently from every other YES benefit plan, even when challenged to do so by Plaintiffs in these proceedings. Although the Plan reminds us that it "was not required to resolve hypothetical disputes concerning other plans not before it," Aplee. Br. at 50 n.11, this argument is unpersuasive in light of the WFSP's striking similarity to the other YES benefit plans–especially given that the Plan has never argued that the WFSP exclusions are broader than the exclusions in, for example, the medical and dental plans. Consequently, the Plan's argument that the WFSP is not arranged by the Company for its employees generally is wholly unsupported and entirely inconsistent with its past practices. It would be unreasonable to deny benefits based on this ground. The Plan has articulated no other rationale for denying benefits, and we can conceive of none that is either apparent or meritorious. Thus, this is a case where a remand is unnecessary and we must award Plaintiffs the benefits to which they are clearly entitled. See Buffonge, 426 F.3d at 31.

- 30 -

Given our disposition of the case, it is unnecessary to consider Plaintiffs' additional arguments that the district court wrongly excluded the statement of Jim Nokes and the Yahoo! finance report. We REVERSE and REMAND, directing the district court to enter judgment awarding Plaintiffs benefits under the WFSP, including interest. We leave to the district court's discretion whether an award of attorney's fees and costs is appropriate under 29 U.S.C. § 1132(g).